


IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DAVID GOODSTEIN<br><br>Plaintiff<br><br>v.<br><br>KAPLAN INC.<br><br>and<br><br>THE WASHINGTON POST COMPANY<br><br>Defendants | FILED IN CAMERA<br>AND UNDER SEAL<br><br>07 1491<br><br>JURY TRIAL DEMANDED<br><br><br>FILED<br><br>APR 1 3 2007<br>MICHAEL E. KUNZ, Clerk<br>By_____ Dep. Clerk |

## COMPLAINT

Plaintiff, David Goodstein (the "Relator"), by and through counsel, hereby files this Complaint under seal on behalf of himself and the United States of America pursuant to the provisions of the qui tam provisions of the civil False Claims Act, 31 U.S.C. Section 3729 et seq., and alleges as follows:

### NATURE OF THE ACTION

1. This case arises from Defendants' fraudulent certification of program requirements necessary to participate in the receipt of Title IV programs, resulting in the unlawful receipt of federal funds provided under the Higher Education Act. As set forth herein, Defendants have fraudulently certified that it maintained an adequate program of instruction for

its Medical Surgical Technician program at its Broomall, Pennsylvania campus, throughout the existence of the Program.

## PARTIES AND JURISDICTION

2. Relator, David Goodstein, is a citizen of the United States, and a resident of the State of Pennsylvania. Mr. Goodstein brings this suit on his own behalf and on behalf of, and in the name of, the United States Government.

3. Defendant Kaplan Inc. is a wholly owned subsidiary of Defendant The Washington Post Company. Kaplan Inc. operates a division named the Kaplan Higher Education Division, which consists of approximately 74 schools in 22 states.

4. This Court has jurisdiction in this matter pursuant to 31 U.S.C. Section 3732(a), and federal question jurisdiction pursuant to 28 U.S.C. Section 1331.

5. This Court has in personam jurisdiction over Defendants under 31 U.S.C. Section 2732(a), which authorizes nationwide service of process.

6. Venue is proper in this District because Defendants maintain and operate the Broomall campus in this District, and the facts underlying the subject matter arose within the District.

7. As a former employee employed by Kaplan Higher Education, the Relator has direct and independent knowledge, within the meaning and definition of 31 U.S.C. Section 2720(e)(4)(B), of the information on which the allegations set forth in this complaint are based. None of the allegations set forth in this complaint are based on a public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative, or

General Accounting Office report, hearing, audit, or investigation, or from the news media. In the alternative, to the extent that such information is based on public disclosure, Mr. Goodstein is the original source of such disclosure.

8. Venue in this District is proper pursuant to 31 U.S.C. Section 3732(a) and 28 U.S.C. Section 1391(b) and (c).

## FACTUAL BACKGROUND

9. In order to receive federal subsidies under Title IV and the Higher Education Act Defendant must enter into a Program Participation Agreement with the Department of Education, in which it agrees to abide by a panoply of statutory, regulatory, and contractual requirements.

10. One of those requirements is that a participating institution enter into a written program participation agreement pursuant to Title 34 of the Code of Federal Regulations, Section 668.14. Each year, the participating institution must certify its compliance with the program participation agreement.

11. By entering into a program participation agreement, an institution agrees that it will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA.

12. Pursuant to the regulations, and in particular, 34 C.F.R. Section 668.72, misrepresentation by an institution of the nature of its educational programs includes, but is not limited to, false, erroneous or misleading statements concerning, inter alia, the *availability*,

frequency and appropriateness of its courses and programs to the employment objectives that it states its programs are designed to meet.

13.     In addition, a school may lose its eligibility to participate in Title IV programs if student defaults on the repayment of Title IV loans exceed specified default rates (referred to as "cohort default rates."). A school whose cohort default rate exceeds 40% for any single year may have its eligibility to participate in Title IV programs limited, suspended or terminated at the discretion of the Department of Education. A school whose cohort default rate equals or exceeds 25% for three consecutive years will automatically lose its Title IV eligibility for at least two years unless the school can demonstrate exceptional circumstances justifying its continued eligibility.

14.     Funding through the Title IV program is material to the financial success of defendants. During the 2006 fiscal year, funds provided under the student financial aid programs created under Title IV accounted for approximately $580 million of the net revenues of the schools in Kaplan's Higher Education Division. Indeed, a reduction in the amount of funds under the Title IV program or changes in terms under which such funds are made available is considered a material risk factor – indeed a more significant risk – which could adversely affect Kaplan's business and the company's overall financial performance.

15.     As set forth more fully herein, Defendants have falsely misrepresented to the United States Government through its Program Participation Agreements, that they make available to students enrolled in its Surgical Technician program appropriate courses necessary to successfully complete the program and meet the employment objectives that it states its programs are designed to meet.

16. Defendants operate the CHI Institute in Broomall, Pennsylvania. The Institute has a program to train students as surgical technicians. The Institute vigorously advertises, promotes and enrolls students, nearly 90% of whom rely upon federal loans, and of which a majority are a member of a minority group, into the Medical Surgical Technician program to train to become employable as Medical Surgical Technicians.

17. In order to complete the Medical Surgical Technician program, each student must complete a 500-hour externship requirement at a bona fide site (typically a hospital or other location) having surgical facilities.

18. Since the inception of the Medical Surgical Technician program in 1997, Defendants have been unable to provide sufficient externship sites for the number of students requiring such sites to complete their program, graduate and be eligible for employment, which employment is the underlying purpose and goal for the program participants.

19. Defendants have, throughout the ten year history of the program, known that there were an insufficient numbers of sites available to provide students the opportunity to complete the mandatory externship requirement for graduation, but nevertheless continued to enroll students far in excess of their ability to provide externship sites as promised.

20. As a result of the lack of sufficient externship sites, students enrolled in the Medical Surgical Technician program, in nearly every instance, completed the didactic portion of the program, only to find that they could not complete the remainder of the program because there were no externship sites available.

21. Defendants have, in nearly every instance, required each student at the completion of the didactic portion of his or her program, to submit a request for a "Leave of Absence." The

Leave of Absence delayed the onset of a student loan repayment by a maximum of two terms, and allowed the student to remain in an enrolled status rather than being dropped from the program which is mandatory after 21 days of consecutive non-attendance. Requiring the students to request a leave of absence eliminated the possibility of their obtaining another, should they need to so do for emergency or other bona fide reasons, in that only one leave was permitted during the program.

22. Students who have received Title IV loans generally have a 26 week grace period from a triggering event to begin repayment of their loans. Students who have been granted a leave of absence and fail to return from the leave have their grace period begin *retroactively* from the date the leave began. Thus, students granted a two term leave of absence of 20 weeks have the grace period end, and just six weeks after the leave of absence has expired.

23. Hundreds of students have waited for months, and often years, for externship sites to become available, during which time they became obligated to begin repayment of their student loans, once they were classified as being dropped from the program upon the expiration of their leaves of absence. These students who began with the expectation of a new beginning and career, have instead nothing to show for their efforts but an unpaid student loan balance and little opportunity of finding employment as a Medical Surgical Technician, unless and until CHI made good on their promise of finding an externship site.

24. As a result of the students' inability to complete the program and subsequent inability to find employment in their chosen field, a higher than average percentage defaulted on their obligations to repay their federal student loans.

25. Defendants' placement of students on leaves of absence was deliberately designed to avoid risking a cohort default rate which could trigger a limit, suspension or termination in the Title IV program.

## COUNT I

## FALSE CLAIMS ACT

26. Plaintiff incorporates paragraphs 1 through 25 as though fully set forth herein.

27. Claims for payment of Title IV funds can be made in a number of ways, conditioned upon the Schools' execution of its Program Participation Agreement and thus eligible for student funds under the program. In the Pell Grant context, students submit funding requests directly (or with school assistance) to the Department of Education. Under the Federal Family Education Loan Program, students and schools jointly submit an application to a private lender on behalf of the student, and a guaranty agency makes the eventual claim for payment to the United States only in the event of default.

28. In either instance, the funds of the United States are directly transferred from the treasury of the United States through the Department of Education, or through the third party intermediary lender, to the participating institution. The institution then credits the student for tuition in the amount of funds transferred.

29. Defendants' submission of the program participation agreement, student loan applications and associated requests for loan funds, all constitute "claims for payment" within the meaning of the False Claims Act.

30. The Defendants' statements described above, including inter alia their representation that Kaplan had an adequate program in place for students enrolled in the Medical

Surgical Technician program to complete the program, which were made as part of claims for payment, were knowingly false and/or made with reckless disregard as to the truth or falsity of the statements contained therein.

31. As a result, Defendants knowingly presented false or fraudulent claims for payment, or caused false or fraudulent claims to be presented to officers or employees of the United States Government, in violation of 31 U.S.C. Section 3729(a)(1).

32. Defendants knowingly made or used, or caused to be made or used, false records or statements in order to obtain the payment or approval of false or fraudulent claims paid or approved by officials of the United States Government in violation of 31 U.S.C. Section 3729(a)(2).

33. Defendants knowingly made or used, or caused to be made or used, false records or statements to conceal, avoid or decrease its obligation to pay, transmit or return money or property to the United States Government, in violation of 31 U.S.C. Section 3729(a)(7).

WHEREFORE Relator, acting on behalf of and in the name of the United States of America, demands and prays that judgment be entered in favor of the United States of America and against Defendants as follows:

1. For treble the amount of actual damages incurred by the United States;

2. For appropriate civil penalties for each false statement or record, as provided for pursuant to the False Claims Act;

3. For all costs and attorneys' fees incurred in this action by Relator and the United States Government.

4. For an additional reward to Relator, on his own behalf, in an amount not less than 15 percent and not more than 25 percent of the Government's recovery if the Government intervenes in this action; or for 30 percent of any such recovery if the Government chooses not to intervene; and

5. For such other relief as the Court determines as appropriate.

Respectfully submitted,

___(MJS6632)___
Michael J. Salmanson - ID. 46707
Scott B. Goldshaw - ID. 85492
SALMANSON GOLDSHAW, P.C.
Two Penn Center
1500 J.F.K. Blvd., Suite 1230
Philadelphia, PA 19102
215-640-0593
215-640-0596 (fax)

Date: April 13, 2007