# Exhibit A

SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Attorney's Office for the Eastern District of Pennsylvania and on behalf of the United States Department of Education (collectively the "United States"); Kaplan, Inc.; The Washington Post Company; and David Goodstein (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.    Kaplan, Inc. is a subsidiary of The Washington Post Company. Kaplan Higher Education Corporation, a subsidiary of Kaplan, Inc., operates schools on 70 campuses in 20 states (hereafter collectively referred to as "Kaplan"). One of those campuses is CHI Institute in Broomall, Pennsylvania (Computer Hardware Service Company, Inc. d/b/a CHI – Broomall, or "CHI").

B.    CHI is a proprietary institution of higher education. It offers career-focused degree and diploma programs in several technical fields including health care. The programs often involve a classroom, or didactic, portion and a field training, or externship, program.

C.    CHI offered a program that led to a diploma in surgical technology. The program, sometimes called the "surg tech" program, was designed to train students for an entry level job in a surgical setting. The duties of such jobs might include ensuring a sterile environment in a surgery room, organizing surgical instruments, providing the instruments to the health care professionals during a surgery, and preparing a patient for surgery.

D.    The surg tech program consisted of two parts. First, CHI provided classroom training on campus. Second, CHI provided an externship at a hospital or surgery center. The externship was a form of field training in a clinical setting. To graduate from the surg tech

program, a student had to complete both the classroom portion of the program and the externship portion of the program.

  E. CHI participated in the federal student financial assistance programs authorized pursuant to Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070 *et seq.* ("Title IV, HEA programs"). The majority of students who enrolled in the surg tech program received some form of federal student financial aid – by way of grants, direct federal loans, and/or guaranteed student loans.

  F. David Goodstein ("Relator") filed a *qui tam* action in the United States District Court for the Eastern District of Pennsylvania captioned *United States ex rel. Goodstein v. Kaplan, Inc. and The Washington Post Company*, No. 07-1491, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) ("the Civil Action"). Relator alleged that CHI misled students and the federal government about the availability of externships for the surg tech program. Relator alleged that CHI enrolled students in the surg tech program; took their tuition monies, which were subsidized through the federal student financial aid programs; but, all the while, knew that it did not have sufficient externship slots to offer all of its students. In fact, the Relator continues, CHI failed to provide students with the externships necessary for them to graduate. The result, according to Relator, is that many students paid CHI for an educational program that CHI knew it could not provide.

  G. The United States Department of Education conducted a program review of certain educational programs at CHI, including the surg tech program.

  H. The United States contends that it has certain civil claims arising from the operations of CHI. Namely, the claims arise from the following conduct as alleged in the program review referenced in Recital G above: (1) CHI's misrepresentations, in the context of

the federal student financial aid programs, during the period from February 2002 through October 2008, about the availability of externships necessary for students to graduate from the surg tech program at CHI; (2) CHI's placement of surg tech students on leaves of absence during the period from February 2002 through January 2008 and CHI's failure to properly implement the Title IV leave of absence provisions generally during the 2005-06 and 2006-07 award years; (3) CHI's misrepresentations, in the context of the federal student financial aid programs, during the period January 2005 through October 2008, about the number of clock hours of instruction contained within courses scheduled and/or delivered at CHI; and (4) CHI's disbursement (a) during the period from award year 2004-05 (beginning July 1, 2004) through award year 2007-08 (ending June 30, 2008), of federal student loan funds (i) to students who were less than half-time students and (ii) to students who had not completed sufficient credits to be eligible for the funds; (b) during the period from award year 2005-06 (beginning July 1, 2005) through award year 2007-08 (ending June 30, 2008), of federal Pell Grant funds to students in excess of the eligibility of those students for the funds; and (c) during April 2007, of federal student loan funds to a student prior to that student's being eligible for the funds. This conduct is referred to below as the Covered Conduct.

I. This Settlement Agreement is not an acknowledgment, admission, or concession by any of the Parties of any liability, misrepresentation, wrongdoing, legal compliance, or noncompliance, or that any of the Parties could be held liable for the acts or omissions of a subsidiary. The Washington Post Company, Kaplan, Inc., Kaplan Higher Education Corporation, and CHI affirmatively deny the Relator's allegations and any findings or allegations arising from the United States Department of Education's program review. Nothing in this

Settlement Agreement is a concession by the United States or the Relator that any allegation of the Relator, any finding of the program review, or any potential civil claim is not well founded.

J.     Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

K.     To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.     CHI shall pay a total of one million, six hundred thousand dollars ($1,600,000) ("Settlement Amount") as follows: (a) CHI shall pay to the United States one million, one hundred twenty-seven thousand, three hundred seventy-eight dollars and twenty-three cents ($1,127,378.23) ("United States Payment") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of Pennsylvania no later than thirty days after the Effective Date of this Agreement; and (b) CHI shall pay by August 1, 2011 four hundred seventy-two thousand, six hundred twenty-one dollars and seventy-seven cents ($472,621.77) ("Student Payment"), pursuant to the instructions of United States Department of Education's Federal Student Aid Office in Philadelphia, to the holders of the loans of the forty-three (43) students listed in said instructions. As proof of the Student Payment, a copy of the front and back of the canceled checks or proof of electronic transfer of funds that comprise the Student Payment must be provided to Nancy Della Vecchia of the United States Department of Education's Federal Student Aid Office in Philadelphia.

2.     Conditioned upon the United States receiving the United States Payment from CHI and as soon as feasible after receipt, the United States shall pay two hundred twenty-five thousand dollars ($225,000) to Relator and his counsel by electronic funds transfer; said payment

represents a share of the proceeds of this Settlement Agreement and Relator's reasonable expenses, attorneys' fees, and costs.

3. Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, and conditioned upon CHI's full payment of the Settlement Amount, the United States releases Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-33; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-12; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4. In consideration of the obligations of Kaplan in this Agreement, conditioned upon CHI's full payment of the Settlement Amount, the United States Department of Education releases and refrains from instituting, directing, or maintaining any administrative action asserting, based on the Covered Conduct, (a) that CHI or Kaplan lacks administrative capability under 34 C.F.R. § 668.16; (b) that CHI or Kaplan lacks financial responsibility under 34 C.F.R. Subpart L, including but not limited to 34 C.F.R. § 668.174(a); (c) that CHI or Kaplan is subject to any penalty, fine, sanction, liability, or administrative action, including but not limited to any action pursuant to 34 C.F.R. Part 668, Subparts F, G, or H; (d) that CHI or Kaplan should be placed or maintained on a provisional form of Title IV, HEA Program Participation Agreement or on the reimbursement or heightened cash monitoring method of receiving Title IV, HEA program funds; and (e) that CHI or Kaplan should be denied certification to participate in the

Title IV, HEA programs or that its current eligibility to participate in the Title IV, HEA programs should be revoked or limited.

5. To close the program review referenced in Recital G of this Agreement, the United States Department of Education will issue a final program review determination. The final program review determination will state that the program review findings have been resolved by means of an agreed-upon settlement, and that this Settlement Agreement is not an acknowledgement, admission, or concession by any of the Parties of any liability, misrepresentation, wrongdoing, legal compliance or noncompliance, or of the validity or non-validity of any of the findings set forth in the program review report.

6. Conditioned upon CHI's full payment of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) from any civil monetary claim the relator has on behalf of the United States for the Covered Conduct and/or for the allegations he set forth in *United States ex rel. Goodstein v. Kaplan, Inc. and The Washington Post Company*, No. 07-1491, under the False Claims Act, 31 U.S.C. §§ 3729-33.

7. Notwithstanding the releases given in paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

      c.      Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

      d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.      Any liability based upon obligations created by this Agreement.

8.      Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in paragraph 2, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its officers, agents, and employees, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

9.      Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan), from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses, attorney's fees, and costs.

10.      Kaplan, Inc. and The Washington Post Company agree to acknowledge that they will comply with 31 U.S.C. § 3730(h) to the extent it is deemed to apply to a former employee. Kaplan, Inc., The Washington Post Company, and its subsidiaries and affiliates hereby release Relator from any claims, or causes of action, whether known or unknown, related

in any way to Relator's filing of the instant action, his disclosures to any state or federal governmental agency in connection with this action, and/or any additional disclosures of any allegations or matters related to the instant action, from the beginning of time until the date of the execution of this Settlement Agreement by Kaplan, Inc. and The Washington Post Company.

11. Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) waive and shall not assert any defenses Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

12. Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) fully and finally release the United States, and its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and

however denominated) that Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) has asserted, could have asserted, or may assert in the future against the United States, and its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

13. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan), and its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1) the matters covered by this Agreement;

    (2) the United States' audit(s), program review, and civil investigation(s) of the matters covered by this Agreement;

    (3) Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) investigation, defense, and corrective actions undertaken in response to the United States' audit(s), program review, and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

    (4) the negotiation and performance of this Agreement;

   (5) the payment CHI makes to the United States pursuant to this Agreement and any payments made to Relator, including costs and attorneys fees, are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

 b. Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

 c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) agree that the United States, at a minimum, shall be entitled to recoup from Kaplan, Inc., Kaplan Higher Education Corporation, The

Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) books and records and to disagree with any calculations submitted by Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) regarding any Unallowable Costs included in payments previously sought by Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan), or the effect of any such Unallowable Costs on the amount of such payments.

14. This Agreement is intended to be for the benefit only of the Parties, Kaplan Higher Education Corporation, and CHI.

15. Upon receipt of all of the payments described in paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation and Order of Dismissal with prejudice of the Civil Action (*United States ex rel. Goodstein v. Kaplan, Inc. and the Washington Post Company*, No. 07-1491) pursuant to Rule 41(a)(1).

16. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

18. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Pennsylvania. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

20. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22. This Agreement is binding on Kaplan, Inc., Kaplan Higher Education Corporation, The Washington Post Company, and their subsidiaries, affiliates, officers, directors, agents, employees, successors, attorneys, and assigns (including but not limited to CHI and any other school operated by Kaplan) successors, transferees, heirs, and assigns.

23.     This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

24.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[SIGNATURES BEGIN ON FOLLOWING PAGE]

## THE UNITED STATES DEPARTMENT OF JUSTICE

DATED: 7/11/11

*[signature]*
ZANE DAVID MEMEGER
United States Attorney
Eastern District of Pennsylvania

DATED: 7/11/11

*[signature]*
MARGARET L. HUTCHINSON
Chief, Civil Division
Assistant United States Attorney

DATED: 7/8/11

*[signature]*
MICHAEL S. BLUME
Assistant United States Attorney

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

UNITED STATES DEPARTMENT OF EDUCATION

DATED: June 29, 2011

_____
Ms. Mary Gust
Director
Administrative Actions and Appeals Service Group
United States Department of Education

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

## DEFENDANTS AND OTHERS

DATED:
JULY 14, 2011

*[signature]*
JOHAN DE MUINCK KEIZER
Senior Vice-President
Kaplan, Inc.

DATED:
JULY 14, 2011

*[signature]*
VERONICA DILLON
Senior Vice-President and General Counsel
The Washington Post Company

DATED:
JULY 15, 2011

*[signature]*
JANICE L. BLOCK
General Counsel
Kaplan Higher Education Corporation

DATED:
JULY 15, 2011

*[signature]*
JANICE L. BLOCK
General Counsel
Kaplan Higher Education Corporation, on behalf of
Computer Hardware Service Company, Inc.
d/b/a CHI – Broomall

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

David Goodstein - RELATOR

DATED: July 8, 2011

_____
DAVID GOODSTEIN

DATED: July 13, 2011

_____
MICHAEL J. SALMANSON
Salmanson Goldshaw, P.C.
Counsel for Relator

[END OF SIGNATURES]